IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,          )
                                    )
          Appellee,                 )
                                    )
v.                                  )
                                    )     Criminal Case No. 3:13CR18-HEH
KENNETH A. WINGLE,                  )
                                    )
          Appellant.                )

## MEMORANDUM OPINION
(Affirming Magistrate Judge's Denial of Defendant's Motion to Suppress)

Defendant Kenneth Wingle ("Wingle") appeals the Magistrate Judge's denial of his motion to suppress. For the reasons set forth herein, the ruling will be affirmed.

## I. BACKGROUND

Early in the morning on September 2, 2012, Officer Brian Michaels of the Department of the Army Civilian Police was on patrol in an unmarked car on Route 36 in Fort Lee, Virginia. (Suppression Hearing Transcript ["Tr."] (ECF No. 8) at 3–4). Officer Michaels first noticed Wingle operating the vehicle in the adjacent lane to his left while both vehicles were stopped at a traffic light. (*Id.* at 4.) Officer Michaels observed that Wingle appeared to be sending text messages on his cellphone while waiting for the light to change. (*Id.*) After the light turned green, both vehicles proceeded forward, with Wingle's vehicle drifting toward the right lane.[1] (*Id.* at 4–5.) Believing that the vehicles would collide if he

---

[1] Officer Michaels recalled that Wingle only drifted for a matter of seconds; he estimated that Wingle drifted for no more than 50 feet. (*Id.* at 21.)

1

continued to accelerate, Officer Michaels applied his brakes.[2] (*Id.* at 5, 31.) At the same time, Officer Michaels saw that Wingle was looking down at his lap and had bluish-white light reflecting off of his chest and face. (*Id.* at 5.)

Officer Michaels then stopped Wingle's vehicle for "inattentive driving"[3] and "what appeared to be texting while driving, using a handheld cellular device." (*Id.* at 4–5.) During the stop, Officer Michaels repeatedly told Wingle that he had stopped Wingle for texting while driving, but never informed Wingle that he had also stopped Wingle for inattentive or reckless driving.[4] (*Id.* at 11.) After making the stop, Officer Michaels determined that Wingle was intoxicated. (*Id.* at 15.) Later, he conducted an inventory search of the vehicle and discovered a glass smoking pipe in the glove box. (*Id.*) Officer Michaels ultimately cited Wingle for driving under the influence of alcohol, failing to maintain one lane of travel, using a handheld cellular device while operating a vehicle, resisting arrest without force, and possession of marijuana. (*Id.* at 16–17.) Only the initial stop of Wingle's vehicle is at issue. (*Id.* at 16.)

Prior to entering his conditional guilty plea on January 11, 2013 (ECF Nos. 19–21), Wingle filed a Motion to Suppress on November 2, 2012 (ECF No. 6). Wingle argued that

---

[2] The recording from the dashboard-mounted video camera in the patrol car does not depict Wingle's vehicle drifting. (Tr. at 6.) Officer Michaels explained that "[t]he video only captures what's in front of the vehicle from the hood out." (*Id.* at 6–7.) Furthermore, he admitted that he was unable to determine if Wingle's vehicle actually crossed the line and entered the right lane. (*Id.* at 5.) However, he was confident that Wingle "was drifting towards [his] lane to where [he] had to brake." (*Id.*)

[3] Officer Michaels clarified that there is no actual charge for inattentive driving, but that such conduct can constitute reckless driving under Virginia law. (*Id.* at 8–9.) Officer Michaels also noted that he would have charged Wingle with reckless driving, but believed that he could not do so because he had charged Wingle with driving under the influence of alcohol. (*Id.* at 8–10.)

[4] Officer Michaels explained that going through a complete list of possible charges during the stop is not his usual practice and that he ultimately informs the driver of the offenses for which he or she will be cited. (Tr. at 11.)

the stop of his vehicle violated the Fourth Amendment because Officer Michaels lacked reasonable articulable suspicion. (Mot. to Suppress at 2.) Specifically, Wingle contended that because texting while driving is only a secondary offense under Virginia law,[5] that offense alone cannot form the basis for initiating a traffic stop. (*Id.*) The Magistrate Judge concluded that the stop was lawful because "Officer Michaels had 'cause to stop or arrest' [Wingle] for reckless driving," regardless of whether he issued a citation for the conduct. *United States v. Wingle*, Criminal No. 3:12MJ378, 2013 U.S. Dist. LEXIS 1623, at *14 (E.D. Va. Jan. 4, 2013). Wingle noted his appeal to this Court on February 4, 2013. (ECF No. 26.)

## II. STANDARD OF REVIEW

The standard of review for an appeal from a magistrate judge's decision is the same as that applicable to an appeal to the Court of Appeals from a judgment entered by a district court judge. *See* Fed. R. Crim. P. 58(g)(2)(D). Accordingly, the magistrate judge's conclusions of law are reviewed de novo, and their findings of fact are reviewed for clear error. *United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005).

## III. ANALYSIS

Citing Virginia Code § 46.2-1078.1, which makes use of a handheld device while driving a secondary offense, Wingle argues that a police officer may not initiate a traffic stop based solely on the observation of a driver using a handheld device. However, this logic is inconsistent with Supreme Court and Fourth Circuit precedent holding that Fourth

---

[5] Subsection C of Virginia Code § 46.2-1078.1 provides that "**[n]o citation** for a violation of this section shall be issued unless the officer . . . has cause to stop or arrest the driver . . . for the violation of some other provision . . . relating to the operation, ownership, or maintenance of a motor vehicle or any criminal statute." (emphasis added)

3

Amendment violations are not determined by state laws. *See California v. Greenwood*, 486 U.S. 35, 43 (1988); *Walker v. Prince George's County*, 575 F.3d 426, 430 (4th Cir. 2009). Regardless of state law to the contrary, the question is whether the stop was unreasonable under the Fourth Amendment. This Court concurs with the Magistrate Judge's finding that the stop was reasonable, but relies on slightly different reasoning.

The Supreme Court and the Fourth Circuit have long recognized that violations of state criminal law do not automatically constitute Fourth Amendment violations. *See Greenwood*, 486 U.S. at 43; *Walker*, 575 F.3d at 430. In other words, reasonableness for purposes of the Fourth Amendment is not determined by adherence to state criminal statutes. States are free to enact protections "beyond the level that the Fourth Amendment requires," but such additional safeguards are "exclusively matters of state law" with no bearing on the legality of a search or seizure under the U.S. Constitution. *Virginia v. Moore*, 553 U.S. 164, 171 (2008). Furthermore, it is well-settled that federal law "governs the admissibility of evidence . . . used in a federal prosecution." *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994).[6] And finally, "there is no exclusionary rule generally applicable to statutory violations." *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011) (internal quotation marks omitted). Thus, the constitutionality of the traffic stop at issue is subject to the reasonable suspicion test discussed below, and the exclusionary rule will only be applied if the stop offended the Fourth Amendment.

---

[6] The suppression remedy for Fourth Amendment violations and any similar remedy for statutory violations are distinct. *See United States v. Donovan*, 429 U.S. 413, 432 n.22 (1977) ("The availability of the suppression remedy for . . . statutory, as opposed to constitutional, violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights.").

4

As a rule, "[c]ourts must employ a commonsense and contextual approach in evaluating the validity [(i.e., reasonableness)] of an investigatory detention." *United States v. McBride*, 676 F.3d 385, 392 (4th Cir. 2012) (citing *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996)). Courts are to consider "the 'totality of the circumstances' . . . to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."[7] *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). As the Magistrate Judge noted, a law enforcement officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Lawing*, 703 F.3d 229, 236 (4th Cir. 2012) (citations omitted).

While an officer need only have reasonable suspicion that criminal activity is afoot to stop a vehicle, a stop is reasonable if the officer has "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). The observation of a traffic violation "provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008). *Branch* further noted that "once the driver has demonstrated that he is entitled to operate his vehicle, and the police officer has issued the requisite warning or ticket, the driver must be allowed to proceed on his way." *Id.* at 336. Accordingly, where the officer has probable cause to

---

[7] Even "[a] set of factors, each of which was individually 'quite consistent with innocent travel,' could still, 'taken together,' produce a 'reasonable suspicion' of criminal activity." *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) (quoting *United States v. Sokolow*, 490 U.S. 1, 9 (1989)).

5

believe a violation has occurred, he may stop the vehicle for the purposes of issuing a citation or warning. *Id.*

Here, Officer Michaels had three separate grounds to initiate the stop. First, on the record before the Court, Officer Michaels had probable cause to believe that Wingle did not have his vehicle under proper control, in violation of Virginia Code § 46.2-852.[8] Under this statute, such driving behavior constitutes reckless driving. It was apparent to the officer that Wingle was not paying full attention while driving, as evidenced by his use of the handheld device and swerving toward the officer's car. This manner of driving clearly endangered the officer, who had to brake to avoid colliding with Wingle's vehicle. Accordingly, Officer Michaels had sufficient grounds to stop Wingle's vehicle, regardless of whether he artfully articulated this reason at the time of the stop or issued a citation for the conduct.[9]

Second, Officer Michaels had probable cause to believe that Wingle had failed to maintain one lane of travel, in violation of Virginia Code § 46.2-804.2. Although the evidence might be insufficient to convict Wingle of failing to maintain one lane of travel, Officer Michaels's testimony is sufficient to show that he had reasonable cause to believe that Wingle was having difficulty keeping his car within the lane markings. Again,

---

[8] Section 46.2-852 provides that "[i]rrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving."

[9] *See Branch*, 537 F.3d at 337 (internal quotation marks and citations omitted) ("[I]f sufficient objective evidence exists to demonstrate reasonable suspicion, a *Terry* stop is justified regardless of a police officer's subjective intent."); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

regardless of whether the officer informed Wingle of this reason for the stop, the stop was reasonable.

Third, Officer Michaels observed Wingle use a handheld personal communications device while operating a vehicle, in violation of Virginia Code § 46.2-1078.1. Although the statute precludes the issuance of a citation for the offense, it contains no prohibition against the officer stopping the vehicle for the purpose of warning the driver about his potentially hazardous conduct. As *Branch* noted, it is permissible, and indeed commonsensical, for an officer to stop a vehicle for the purpose of issuing a warning when appropriate. Moreover, the two other violations for which Wingle could have been stopped—reckless driving and failing to maintain one lane of travel—each could serve as a primary violation allowing the officer to stop the vehicle and to issue a citation for the secondary offense. Therefore, Officer Michaels had adequate grounds to stop Wingle's vehicle, if for no other reason than to admonish him to pay attention to the roadway.

Each of these justifications for the stop yields the same result—the stop was reasonable. Any violation of the state statute is irrelevant and does not implicate the Fourth Amendment. Accordingly, there is no Fourth Amendment violation, and there are no grounds to suppress the evidence obtained as a result of the stop.

## IV. CONCLUSION

For the foregoing reasons, Wingle's appeal will be denied, and an appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 20, 2013
Richmond, VA

7